***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Stephenson.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. All the currently named Parties to this action are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter. Defendants reserve *Page 2 
the right to seek an Order adding additional Defendant-Employers in this case, including but not limited to the State of North Carolina, North Carolina Industrial Commission, and/or St. Augustine's College.
2. Employee is Herman Colvin.
3. Employer is Wake Count/City County Bureau of Identification.
4. Defendant-Employer is self-insured with Key Risk Management Services, Inc. as the third-party administrator.
5. Defendant-Employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The Employer/Employee relationship existed between the Employer and the Employee on January 1, 2007, the date of the injury.
6. The Employee's average weekly wage was $947.24, yielding a compensation rate of $631.52.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Stephenson, Plaintiff was 52 years old. Plaintiff is a college graduate who also has an extensive military career, including service in the Middle East.
2. In 1985, Plaintiff began working for Defendant-Employer Wake County, which is sometimes referred to in this litigation as CCBI. Plaintiff worked for Defendant-Employer as a crime scene investigator. In that position, Plaintiff was often required to lift and carry dead *Page 3 
bodies away from crime scenes. In addition, Plaintiff was required to carry a firearm with him to crime scenes due to the potentially dangerous circumstances which he might encounter there.
3. At some time in early 2006, Plaintiff sustained a lumbar disc herniation at the L4-5 level which was apparently not related to his employment with Defendant-Employer. On or about April 4, 2006, Plaintiff underwent spinal surgery at L4-5 which was performed by Dr. Mark Mickles, a board certified orthopaedic surgeon. The surgery went well and Plaintiff did not experience any complications.
4. Following the April 4, 2006 surgery, Plaintiff was released to regular duties as a crime scene investigator with Defendant-Employer on August 2, 2006. At that time, Plaintiff was not experiencing any residual low back or leg pain.
5. On or about January 1, 2007, Plaintiff sustained an admittedly compensable injury by accident to his lower back while he was lifting a body bag at a crime scene while working. Defendants accepted this work injury by way of a Form 60, which set forth an average weekly wage of $947.27, and a corresponding weekly compensation rate of $631.52.
6. After the work injury of January 1, 2007, Plaintiff was authorized by Defendants to return to Dr. Mikles, who he had not seen since August 2, 2006. After examining Plaintiff and taking x-rays, Dr. Mikles opined that Plaintiff had sustained a "new work-related injury" and kept Plaintiff out of work for a period of three weeks, during which Plaintiff received TTD benefits pursuant to the Form 60. On or about February 26, 2007, Plaintiff returned to work with Wake County on light-duty status consistent with the work restrictions assigned by Dr. Mikles.
7. While working on light-duty status, Plaintiff continued to complain of pain in the lower back and the buttocks. As a result, Dr. Mikles ordered a follow-up MRI scan which was performed on March 1, 2007. The March 1, 2007 MRI revealed a 10 by 8 millimeter recurrent *Page 4 
disc extrusion at L4-5. Dr. Mickles interpreted the MRI to show a small recurrent lateral disc herniation at L4-5 with significant disc degeneration at L4-5 and L5-S1 without significant nerve root compression. On March 9, 2007, Dr. Mickles ordered physical therapy, work conditioning, and a functional capacity evaluation. Plaintiff was kept on light duty, part time restrictions with respect to his work.
8. On May 21, 2007, Plaintiff took part in a functional capacity evaluation which was valid with no inconsistencies, inappropriate illness behavior or symptom magnification. The test determined that Plaintiff could occasionally lift 120 pounds and carry 100 pounds. Plaintiff was not to lift in excess of 120 pounds and was to seek assistance if he should need to lift a body which exceeded that weight.
9. On or about May 25, 2007, Dr. Mickles saw Plaintiff, who complained of back pain and buttock pain, with occasional right buttock and leg pain. On that date, Dr. Mickles planned to progress Plaintiff to work conditioning and to release him under a functional capacity evaluation for permanent restrictions.
10. Dr. Mikles did in fact release Plaintiff from treatment under his functional capacity evaluation restrictions with a permanent partial impairment rating of 5% on or about May 31, 2007. At the same time, Dr. Mikles cleared Plaintiff to return to his regular-duty work with Wake County, which Plaintiff did. Dr. Mikles further instructed Plaintiff that, if the low back or leg pain increased, an epidural steroid injection or additional physical therapy could be considered.
11. Dr. Mickles testified that he expects to see a certain percentage of his patients in Plaintiff's condition return to him after their release with increased back or leg pain, and that this increased pain can sometimes occur weeks or months after the release. *Page 5 
12. Plaintiff resigned from his position with Wake County as of July 26, 2007. Plaintiff did not believe that he would have been able to continue to safely work as a crime scene investigator with Defendant-Employer over the long term in light of his low back condition.
13. On July 12, 2007, Plaintiff was hired by the North Carolina Industrial Commission as a fraud investigator. Plaintiff's first day of work in that position was July 28, 2007. During his employment with the Industrial Commission, Plaintiff also worked as an adjunct professor of Criminal Justice at St. Augustine's College in Raleigh, NC. Plaintiff's job with the Industrial Commission was not as strenuous as his previous job as a crime scene investigator for Defendant-Employer, and Plaintiff did not suffer a new injury to his low back while working at the Industrial Commission or at St. Augustine's College.
14. At some time in July or August 2007, Plaintiff's low back and right buttock pain, which had persisted following his release by Dr. Mickles, became worse and was further exacerbated in September 2007.
15. On September 26, 2007, Dr. Mickles saw Plaintiff, who reported increased low back pain over the course of the preceding month which radiated into his right buttock, thigh and leg. Dr. Mickles attributed this pain to an aggravation or exacerbation of Plaintiff's January 1, 2007 injury and prescribed a steroid dose-pack, physical therapy, Ultram and Flexeril, and ordered a new MRI.
16. On September 18, 2007, Plaintiff's employment at the Industrial Commission was terminated for reasons that are unrelated to the present workers' compensation claim. Plaintiff's last day of work at the Industrial Commission was September 28, 2007. On that date, a paralegal with the Industrial Commission named Barbara Ann Jenkins drove Plaintiff to his residence in order to retrieve some work related files. Ms. Jenkins did not recall that Plaintiff limped or *Page 6 
overtly appeared to be in any significant pain on that date. Several days later, Ms. Jenkins met Plaintiff outside the building where the Industrial Commission is housed in order to receive some office supplies and small equipment Plaintiff had been using at home during his employment. On that date, Plaintiff was limping and appeared to be in a great deal of pain. Plaintiff indicated to Ms. Jenkins that he had experienced back problems.
17. Plaintiff returned to Dr. Mickles on September 26, 2007 complaining of severe pain in his back and right leg, and weakness in his right leg. Dr. Mickles considered Plaintiff's condition on September 26, 2007 to be a flare up of his January 1, 2007 injury by accident.
18. On October 5, 2007, Plaintiff reported to his appointment with Dr. Mickles in a wheelchair due to his pain. A lumbar MRI performed on that date showed "moderate large recurrent disc herniation L4-5 with complete obliteration of the right neuroforamen with impingement of the right L5 exiting nerve root severely with minimal foraminal narrowing on the left side with enhancement around the extruded disk fragment." The herniated disk shown on the October 4, 2007 MRI was in the same location as the herniated disk Dr. Mickles observed in March 2007, however, it had progressed and become larger. Dr. Mickles took Plaintiff out of work completely and recommended a revision L4-L5 microdiscectomy.
19. Dr. Mickles performed the revision microdiscectomy at L4-L5 on October 9, 2007. Dr. Mickles removed a moderate amount of free disc material and noted, "The traversing nerve root was scarred, reddened and inflamed."
20. The October 9, 2007 revision microdiscectomy was related to Plaintiff's January 1, 2007 work injury.
21. Due to his October 9, 2007 surgery, Plaintiff missed four to six weeks of work as an instructor at St. Augustine's College. *Page 7 
22. While the surgery was successful in alleviating the pain he was experiencing in his right leg, Plaintiff continues to experience significant pain and stiffness in his low back for which he continues to be prescribed several narcotic pain medications, anti-inflammatories, antispasmodics, and nonsteroidal anti-inflammatory medications. Plaintiff is also limited in the amount of weight he can lift and how long he can walk or remain seated or standing.
23. On May 22, 2008, Dr. Mikles completed a form indicating that the January 1, 2007 incident described by plaintiff had more likely than not aggravated, accelerated or activated a preexisting condition. Dr. Mikles wrote that plaintiff had reached maximum medical improvement and that he was not capable of any work at that time. On June 3, 2008, plaintiff was declared to be at maximum medical improvement with a 15% permanent partial impairment rating specifically for the January 1, 2007 injury by accident. On July 9, 2008, Dr. Mikles wrote again that plaintiff was to remain out of work.
24. Plaintiff continues to be unable to work in any job as the result of his January 1, 2007 work injury.
25. Plaintiff will likely need fusion surgery in the future.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On January 1, 2007, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with Defendant-Employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6). *Page 8 
2. In order to meet the burden of continuing disability, an employee must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by the employee's injury by accident. Hilliard v. Apex Cabinet Company,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Russell v.Lowes Product Distribution,108 N.C.App. 762, 425 S.E.2d 454 (1993). In this case, Plaintiff has met this initial burden of proving disability by presenting sufficient medical evidence to prove that the admittedly compensable January 1, 2007 injury by accident caused Plaintiff's inability to work in any employment from October 5, 2007 to the present and continuing.
3. As the result of his January 1, 2007 injury by accident, Plaintiff is entitled to temporary total disability compensation at the rate of $631.52 per week from October 5, 2007 through the present and continuing. N.C. Gen. Stat. § 97-29.
4. Regarding the payment of medical expenses for Plaintiff's conditions, the employer admitted to the compensability of Plaintiff's low back injury by executing a Form 60. The admission of compensability creates a presumption that the injury remains compensable, and the employer has the burden of rebutting the presumption of ongoing disability. Perez v. American Airlines/AMRCorp., 174, N.C.App. 128, 620 S.E.2d 288 (2005); Parsons v.Pantry *Page 9 Inc., 126 N.C.App. 540, 485 S.E.2d 867 (1997). Given the evidence in this case, Defendants have not rebutted the presumption that Plaintiff's lumbar disc herniation and the subsequent surgery of October 9, 2007 are related to Plaintiff's January 1, 2007 injury by accident. Therefore, Defendants are responsible for Plaintiff's lumbar disc herniation, subsequent surgery and continuing medical care for his low back condition. Perez v. American Airlines,supra; Parsons v. Pantry Inc., supra.
5. Plaintiff is entitled to payment by Defendant-Employer of all medical expenses incurred or to be incurred as a result of his January 1, 2007 injury by accident, including expenses related to treatment provided by Dr. Mickles and specifically including his October 9, 2007 surgery. Dr. Mickles is approved as Plaintiff's treating physician. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $631.52 per week from October 5, 2007 to the present and continuing until Plaintiff returns to work or further order of the Commission. All compensation that has accrued shall be paid in lump sum.
2. Defendant-Employer shall pay all related medical expenses incurred or to be incurred by Plaintiff as a result of his January 1, 2007 compensable injury by accident for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen Plaintiff's period of disability, including expenses related to the treatment provided by Dr. Mickles. *Page 10 
3. A reasonable attorney fee of 25% of the compensation due Plaintiff under paragraph one of this award is approved for Plaintiff's counsel and shall be paid by Defendants as follows: 25% of the lump sum due Plaintiff under paragraph one of this award which has accrued to date shall be paid directly to Plaintiff's counsel. Plaintiff's counsel shall receive every fourth check of all future compensation.
4. Defendants shall pay the costs.
This the 24th day of March, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER *Page 1